[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 07-10139

———————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 29, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-02831 CV-2-IPJ

SUSAN KEITH,

Plaintiff-Appellant,

versus

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Northern District of Alabama

———————————————

**(November 29, 2007)**

Before MARCUS and PRYOR, Circuit Judges, and LAND[*], District Judge.

LAND, District Judge:

---

[*]Honorable Clay D. Land, United States District Judge for the Middle District of Georgia, sitting by designation.

Appellant Susan Keith ("Keith") appeals the district court's judgment in favor of Prudential Insurance Company of America ("Prudential") upholding Prudential's denial of Keith's claim for disability benefits under the group long-term disability plan issued and administered by Prudential. Although the district court stated the standard for reviewing Prudential's denial of Keith's claim, the district court's order does not indicate that it completely applied that standard to reach its decision. Therefore, we reverse the judgment of the district court and remand to allow the district court to apply the proper standard of review.

## I. BACKGROUND

### A. Factual Basis for Claim

Keith, a thirty-seven year old female, was formerly employed by MBNA Technology in a sedentary position known as "Team Manager II." As an MBNA employee, Keith was a participant in a group long-term disability plan issued and administered by Prudential. Keith has suffered from several medical conditions since at least the mid-1990s, although her primary diagnosis is fibromyalgia, a chronic syndrome characterized by significant muscle pain. Because of her medical conditions, she struggles to perform even sedentary job functions.[1] Since

---

[1]Keith has been diagnosed with, among other things, Sjögren's syndrome, fibromyalgia, and Arnold Chiari Malformation. Keith maintains these conditions cause her to suffer from debilitating pain and fatigue leading to difficulty in performing essential job tasks, including

2

1999, Keith had been permitted to accommodate her symptoms by working from home, working shortened hours, and working on individual projects that did not require her to attend long meetings. This modified schedule afforded her the flexibility to rest and perform continuous therapy throughout her day.

Despite her employer's accommodations, Keith's condition worsened to the point where she felt unable to work, even in a modified manner. In the spring of 2002, Keith became pregnant, and on or about August 8, 2002, she ceased working for MBNA due to her alleged disability. On November 21, 2002, approximately one month before the birth of her child, Keith filed a claim with Prudential for long-term disability benefits. Although benefits were approved in early February 2003, after further review Prudential determined that its initial conclusion that Keith could not perform sedentary work was unsupported by objective evidence contained in her medical records. Accordingly, on May 30, 2003, Prudential informed Keith that her benefits would be discontinued as of July 1, 2003. Keith subsequently filed three requests for reconsideration.

---

concentrating, sitting or standing for extended periods of time, and performing repeated tasks such as keyboarding. Although Keith has been prescribed medication for her symptoms, she is unable to tolerate many of her prescriptions. As a result, she attempts to manage her symptoms through a time-consuming regimen of heat, ice, and physical therapy. According to Keith, this regimen leaves her with little energy to perform daily tasks outside of the workplace, such as cooking and caring for her child.

During the reconsideration process, three medical professionals reviewed Keith's records and confirmed that objective evidence supported Prudential's conclusion that Keith was not totally disabled.[2] Prudential concluded there had been no significant deterioration in Keith's condition between the time she originally filed for benefits and the time she stopped working altogether. Prudential also determined that the level of physicality necessary to care for her infant child exceeded the level of physicality necessary to perform her sedentary job functions. Finally, Prudential noted that Keith's supervisor had agreed to accommodate her by continuing her modified work schedule. Accordingly, Prudential upheld its previous determination that Keith was not totally disabled as defined by its policy.

---

[2]Prudential's policy defines "disabled" as follows:

You are disabled when Prudential determines that:
- you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury.**

(Mem. Op. 5 (emphases in original).) Adele Glita, a registered nurse, reviewed Keith's records and concluded there was insufficient evidence to indicate that she was unable to perform sedentary work. A medical consultant who is board certified in physical medicine and rehabilitation also reviewed her records and reached the same conclusion. Finally, Keith's records were evaluated by Dr. Joel F. Moorhead, an independent medical professional and Assistant Professor at Emory University, who also concluded that she was not totally disabled.

Keith filed the present action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., seeking to overturn the denial of her claim for long-term disability benefits. Both parties filed motions for summary judgment which were denied. The parties then agreed that the district court would decide the case based upon the administrative record and the briefs of the parties.

**B. The District Court Decision**

After its consideration of the administrative record, the briefs of the parties, and the applicable law, the district court issued a Memorandum Opinion entering judgment in favor of Prudential. In its opinion, the district court, quoting Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1138 (11th Cir. 2004), outlined the required multi-step analysis as follows:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

5

(4)  If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)  If there is no conflict, then end inquiry and affirm the decision.

(6)  If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Applying the steps it enumerated, the district court first assumed that Prudential's decision that Keith was not disabled was <u>de novo</u> wrong because (1) Keith's treating physicians believed she was unable to work, (2) her employer recognized that she could not work in a seated position for forty hours a week, and (3) she was approved for Social Security disability benefits.

The district court next determined that the plan administrator was vested with discretion in reviewing Keith's claim.  Accordingly, the court examined whether Prudential's "wrong" decision was supported by reasonable grounds based upon facts known to the administrator at the time the decision was made.  In making its determination on this issue, the district court focused primarily on Dr. Moorhead's independent analysis of Keith's records.  Dr. Moorhead observed that Keith had been working for the past several years with similar symptoms and that she was reasonably active at home and in the community.  Thus, Dr. Moorhead opined that the only material change was an increase in her subjective symptoms

and her tolerance to those symptoms. The district court also noted that the administrative record supported Prudential's contention that Keith decided to give up her career only after giving birth to her child.

Relying on Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825, 123 S. Ct. 1965, 1967 (2003), the district court concluded that it was not required to give particular deference to the opinions of Keith's treating physicians. The court also reasoned that as long as the administrator's determination had a reasonable factual basis, the determination must be upheld, even if the record also contained contrary information. Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1280 (11th Cir. 2005). Based on the foregoing, the district court concluded that the decision of the administrator was reasonable and thus not arbitrary and capricious.

Having determined that Prudential's decision to deny benefits was "wrong but reasonable," the district court next concluded that since Prudential acted as the plan administrator and also paid plan benefits from its own funds, it was operating under a conflict of interest, a fact that neither party disputes. The district court recognized that the existence of this conflict of interest required it to apply the "heightened" arbitrary and capricious standard of review and observed that this "heightened" standard shifted the burden to the plan administrator to show that its "wrong but reasonable" decision to deny benefits was not tainted by self-interest.

Notwithstanding its recognition that the "heightened" standard applied, the court never applied it in its otherwise comprehensive and well-drafted order. The district court simply reiterated that Prudential's "wrong" decision was "reasonable" and then summarily stated that it was "unable to conclude that the administrator's benefits denial decision was arbitrary and capricious." (Mem. Op. 23.)

Keith appeals the district court's decision, contending that the district court erred in concluding that Prudential's "wrong" denial was reasonable and by failing to determine under the "heightened" arbitrary and capricious standard that Prudential had effectively purged itself of the taint of self-interest that is presumed whenever a plan administrator also pays benefits.

## II. DISCUSSION

The seminal case in this Circuit on the "heightened" arbitrary and capricious standard of review makes it clear that when an ERISA plan administrator operates under a conflict of interest, the burden shifts to the administrator to prove that its decision was not "tainted by self-interest." Brown v. Blue Cross & Blue Shield of Ala., 898 F.2d 1556, 1566 (11th Cir. 1990). The "heightened" arbitrary and capricious standard applies to both plan interpretation and factual determinations by the administrator. Torres v. Pittston Co., 346 F.3d 1324, 1332 (11th Cir. 2003)

(observing that "the need to protect against the fiduciary's self-interest applies with equal force to plan determinations and findings of fact made by a conflicted fiduciary in the course of its benefits decision").

The district court recognized that it was required to apply this "heightened" arbitrary and capricious standard based upon Prudential's conflict of interest. After the district court thoroughly analyzed whether Prudential's "wrong" decision was nevertheless "reasonable," the district court found a conflict of interest but then failed to provide any analysis supporting the conclusion that Prudential had successfully purged the taint of self-interest. The district court simply summarily concluded that Prudential's decision was not arbitrary and capricious, impliedly because the administrator's decision was "reasonable" albeit "wrong."

We cannot determine from the district court's order the basis for its apparent conclusion that Prudential carried its burden under the final step of the "heightened" arbitrary and capricious standard. Accordingly, the decision of the district court is REVERSED and the case is REMANDED to the district court so that it may fully apply the "heightened" arbitrary and capricious standard, which requires a specific determination that the taint of self-interest has been purged.